## OKLAHOMA NEWS CO. v. RYAN, County Treas.

No. 14862—Opinion Filed March 4, 1924.

Rehearing Denied March 25, 1924.

(Syllabus.)

### 1. Statutes—"Joint Resolution."

If a resolution originating in one house of the Legislature is passed by that house and is then sent to the other for its concurrence, and is passed by it, signed by the presiding officer of each house and approved by the Governor, it is a joint resolution as that term is used in the Constitution and the joint rules of the Legislature.

### 2. Same—Effect to Modify Laws.

A joint resolution which has been duly passed by both branches of the Legislature, signed by the presiding officer of each house, and approved by the Governor, may operate to alter or modify an existing law, where such alteration or modification is of a temporary character.

**3. Taxation—Right to Recover Illegal Tax —Payment Under Protest.**

When a taxpayer pays the full amount of the tax demanded of him by the county treasurer under protest and within the time provided by law, he is entitled to maintain an action to recover the illegal portion of such tax under section 9971, Comp. Stat. 1921, although the amount demanded by the treasurer and paid by the taxpayer was not the full amount of the tax due, as the only method by which the taxpayer can ascertain the amount of the tax is from the county treasurer, and when he has paid such amount under protest and within the time provided by law, he has complied with the conditions precedent to maintaining his action.

**4. Same—Effect of Joint Resolution Extending Time for Payment.**

The joint resolution contained in chapter 248, Sess. Laws 1923, extending the time for the payment of the 1922 taxes, simply provided a time for the payment of the taxes, and did not restore any right or remedy for the recovery of illegal taxes and was not in violation of section 52, art. 5, of the Constitution. No right or remedy under section 9971, Comp. Stat. 1921, existed until the taxpayer paid his taxes at the time and in the manner provided by law; after the passage of the joint resolution prescribing the time for which the 1922 taxes might be paid, a taxpayer could pay his tax within the time prescribed by such resolution under protest and a right of action thereupon existed and a remedy was afforded for the collection of the illegal portion of such taxes under section 9971, Comp. Stat. 1921.

**5. Same—Notice of Protest to Officer—Sufficiency.**

The purpose of the provisions of section 9971, Comp. Stat. 1921, requiring the taxpayer to give notice to the officer collecting the tax showing the grounds of complaint, was to require the person complaining to point out the portion of the tax which the taxpayer claims was illegal, together with a sufficient statement of the objections to notify the collector of the character of the objections. It was not contemplated that the protest should be in any particular form or that it should meet the requirements of a petition filed in court for the recovery of the taxes. A notice of protest which pointed out the specific items complained of, together with the exact amount of each tax which it was asserted had been illegally levied and alleged that such taxes were illegal because they had been levied without authority to make the levy or because the levy was excessive, was a sufficient compliance with the statute.

**6. Taxation—Computation of Tax Rate— Case Followed.**

The construction given section 9699, Comp. Stat. 1921, in Hines v. Dalton, 90 Okla. 239, 217 Pac. 168, relative to the audition of ten per cent. as allowance for delinquent taxes is followed.

**7. Schools and School Districts—Separate Schools—Tax Rate.**

Chapter 48, Senate Bill 323, Act of March 31, 1921, authorized a levy for the maintenance of separate schools and removed all statutory limitations on such levy up to the constitutional limit of eight mills, and if the amount which could be raised within the eight mills was insufficient, then the excise board was authorized to make an additional levy of 2 mills under section 9, art. 10, of the Constitution.

**8. Taxation—Counties—Limit for "Current Expenses"—Provision for Boys' School.**

Section 1, ch. 297, Sess. Laws 1919, authorized a levy of not to exceed one-half mill on the dollar upon all taxable property in counties having a population of 52,000 persons for the purpose of buying a suitable farm and the erection of a building and the maintenance of a county supervised school for a home for dependent and neglected white boys of such county under the age of sixteen years. The fund authorized to be levied under this statute, when levied, becomes a part of the fund for current expenses for the fiscal year for which the levy is made, and the amount of the levy for this purpose and other current expenses is limited by the provisions of the statute relative to current expenses. The levy authorized by the statute is not in addition to the levy for current expenses limited to four mills by section 9692, Comp. Stat. 1921, and the total levy for current expenses and for the purposes provided by the Boy School Act cannot exceed the limit of four mills, unless authorized by an election.

**9. Municipal Corporations—Tax Rate—General Laws Controlling.**

Section 9692, Comp. Stat. 1921, limits the total levy for current expenses for each city in this state to six mills on the dollar, unless an additional levy is authorized by an election held as provided under sections 9707 and 9712, inclusive, and these provisions of the statute limit the levy which can be made in all cities in this state governed by charters or otherwise. Cities in this state receive authority to make tax levies by virtue of general laws enacted by the Legislature, and not otherwise, and in the absence of legislative authority, the city has no power to assess and collect a tax at all. The general laws of this state granting to cities the power to levy taxes is found in sections 9692, 9699, 9707 to 9712, inclusive, and provisions of charters of cities do not supersede these general laws. The amount of tax authorized to be levied by a municipality and the manner of levying the same, is a matter of general public interest and can be accomplished only by general laws and not by charter provisions.

**10. Same—"Current Expenses" of City.**

The current expenses of cities of this state, which are limited to six mills by section 9692, Comp. Stat. 1921, include not only current recurring expenses of the city government, but include any expenditure for which a tax is authorized to be levied by the Legislature for any current fiscal year other than the taxes authorized by sections 10 and 27 of art. 10 of the Constitution and the annual installments on bond issues and judgments, and interest thereon.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by the Oklahoma News Company against M. S. Ryan, County Treasurer. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

Adelbert Brown, for plaintiff in error.

J. K. Wright, Co. Atty., for defendant in error.

John F. Martin, Municipal Counselor.

H. C. Thurman, for the Board of Education of Oklahoma City.

COCHRAN, J. This action was brought by the plaintiff in error to recover from the county treasurer of Oklahoma county certain taxes paid under protest for the year 1922. The defendant filed a demurrer to plaintiff's petition, which demurrer was sustained as to causes of action numbered three, four, six, and seven. The demurrer was overruled as to the other causes of action. The case was tried and a judgment rendered for the defendant on the first and second causes of action and for the plaintiff on the fifth cause of action. The plaintiff has appealed from the judgment rendered and the defendant has filed a cross-petition in which it is alleged that the trial court erred in refusing to sustain the demurrer to plaintiff's entire petition. We will first dispose of the question presented by this cross appeal. Section 9971, Comp. Stat. 1921, provides in part as follows:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. It shall be the duty of such collecting officer to hold such taxes separate and apart from all other taxes collected by him, for a period of 30 days, and if within such time summons shall be served upon such officer in a suit for recovery of such taxes, the officer shall further hold such taxes until the final determination of such suit. * * *"

The defendant contends that plaintiff did not bring itself within the provisions of this act by paying the tax within the time and in the manner provided by law. The first one-half of 1922 taxes was paid by the plaintiff under protest on March 15, 1923, and suit was filed to recover the alleged illegal tax on the 11th day of April, 1923. The defendant contends that the plaintiff could not avail itself of the provisions of section 9971 without making payment of one-half of its taxes on or before January 1, 1923, and that a payment of the tax after the same or any part thereof had become delinquent would not enable the plaintiff to maintain this action. The plaintiff contends that the tax was paid at the time and in the manner provided by law, and relies on a resolution adopted by the Senate January 17, 1923, and by the House January 31, 1923, which resolution is as follows:

"Be it Resolved by the Senate and House of Representatives of the state of Oklahoma, that the time for the payment of the first half of the 1922 ad valorem taxes be and the same is hereby extended without penalty until the 15th day of March, 1923, and that the last half of the 1922 ad valorem taxes shall not become delinquent until the 15th day of June, 1923, and that no penalty shall accrue on said taxes if paid according to the provisions of this resolution." (Chapter 248, Session Laws 1923, p. 443.)

The defendant contends that this resolution is not a joint resolution, but a concurrent resolution; that a joint resolution is a resolution adopted by the Senate and House in a joint session and that the resolution adopted by the Senate on January 17th and by the House of Representatives on January 31st is not a joint resolution, but is simply a concurrent resolution adopted by the Senate and concurred in by the House; and not being a joint resolution, operates merely as the expression of the opinion by the Legislature and cannot repeal, amend, or supersede a regularly enacted statute of the state. There is no foundation under the Constitution of our state and our legislative practice for this distinction which the defendant seeks to make. It does not matter whether the resolution is termed a joint resolution or a concurrent resolution. If the resolution is passed by one house and is then sent to the other house for its concurrence and is passed by it and signed by the presiding officer of each house, and approved by the Governor, it becomes a law regardless of its designation and is a joint resolution within the meaning of that term as used in the Con-

stitution and the joint rules of the Legislature. Cushing on Law and Practice of Legislative Assemblies, sec. 800, says:

"It is a common course of proceeding for the house to agree to certain resolutions, either reported by a committee, or introduced by a member, as the basis of proceedings to be afterwards instituted, in the form of an address, impeachment or bill; in which case, the practice is to refer the resolutions to a committee for the purpose of being put into the proper form. Resolutions of this description are sometimes made the joint act of both branches, by being first agreed to in one branch, and then sent to the other for its concurrence."

The defendant says that a resolution is merely the form in which legislative bodies express their opinion and is not a law and cannot be used for the purpose of repealing, amending, or superseding a regularly enacted statute of the state. As a general rule a joint or concurrent resolution adopted by the Legislature will not have the force or effect of a law, where the Constitution under which the legislative body operates requires the enacting of all laws to be in some prescribed form other than by resolution, but in section 2403, Law & Prac. of Leg. Ass. (Cushing), it is said:

"A form of legislation, which is in frequent use in this country, chiefly for administrative purposes of a local or temporary character, sometimes for private purposes only, is variously known in our legislative assemblies as a joint resolution, a resolution, or a resolve. This form of legislation is recognized in most of our Constitutions, in which, and in the rules and orders of our legislative bodies, it is put on the same footing, and made subject to the same regulations, with bills properly so called. In Congress, a joint resolution, which is the name given in that body to this kind of legislation is there regarded as a bill." (Swan v. Buck, 40 Miss. 268: Olds v. Comm. of State Land Office [Mich.] 86 N. W. 952.)

The joint rules of the Oklahoma Legislature refer to bills and resolutions in the same terms. See Joint Rules, 3, 7, 11, and 12. The framers of the Constitution contemplated the passage of laws by bills and by joint resolutions and the practice existing in the Legislature of passing laws of a temporary character by joint resolution should be upheld in the absence of a constitutional requirement that all laws should be enacted by bill. The Oklahoma Constitution contains no such requirement. Section 31, art. 5, of the Constitution provides:

"Every bill shall be read on three different days in each house, and no bill shall become a law unless, on its final passage, it be read at length, and no law shall be passed unless upon a vote of a majority of all the members of each house in favor of such law, and the question, upon final passage, shall be taken upon its last reading, and the yeas and nays shall be entered upon the journal."

It will be noted that after providing that each bill shall be read on three different days in each house, the above section then provides:

"No law shall be passed unless upon a vote of a majority of the members of each house in favor of such law"

—which shows that the framers of the Constitution intended that a law might be passed other than by bill, but that no law, whether by bill or otherwise, should be passed unless upon a vote of a majority of the members of each house in favor of such law. Section 11, art. 6, reads in part as follows:

"Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it; if not he shall return it with his objections to the house in which it shall have originated, who (which) shall enter the objections at large in the journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill or joint resolution, it shall be sent, together with the objections to the other house, by which it shall likewise be reconsidered; and, if approved by two-thirds of the members elected to that house, it shall become a law, notwithstanding the objections of the Governor."

This provision of the Constitution shows clearly it was intended that laws might be enacted by bill or by resolution, but that neither bill nor joint resolution shall become law unless presented to the Governor for approval or rejection. It further appears that the joint resolution contemplated was the joint act of both branches of the Legislature, being first agreed to in one branch and then sent to the other for its concurrence. We conclude, therefore, that a joint resolution which has been duly passed by both branches of the Legislature, signed by the presiding officer of each, and approved by the Governor may operate to alter or modify an existing law, where such alteration or modification is of a temporary character.

It is next contended that if the resolution is considered as a duly enacted law, it should be construed to mean that no further penalty on the taxes mentioned in the resolution would attach from the approval of the act from February 5, 1923, to

March 15, 1923, but did not relieve the taxpayers from liability for penalties which had accrued from January 1, till February 5, 1923. It is contended that should the act be construed as retroactive it would be in violation of section 53, art. 5, of the Constitution, which provides:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities or obligations of any corporation, or individual, to the state, or any county or other municipal corporation thereof."

It is further contended that since the joint resolution did not release the accrued penalties, the plaintiff cannot maintain this action, because it paid the tax without paying the penalty, and therefore did not bring itself within section 9971 by paying "the full amount of the tax."

As we view the case, it may be conceded, without deciding the question, that the joint resolution was not retroactive so as to relieve the plaintiff from the payment of the accrued penalty. When the plaintiff paid the full amount of the tax demanded of him by the county treasurer he had complied with that condition of section 9971, supra, although the amount demanded and paid by it was not the full amount of the tax due. The only method by which the taxpayer can ascertain the amount of the tax is from the county treasurer, and when he pays the amount demanded by the county treasurer under protest and within the time provided by law, the taxpayer is entitled to maintain an action to recover the illegal tax. In the instant case the taxpayer paid the full amount of the tax demanded by the county treasurer, and is not deprived of his right to maintain this action, because the penalty which had accrued for 35 days was not demanded and was not paid

It is next contended that the remedy provided by section 9971, Comp. Stat. 1921, was lost after the expiration of 30 days from January 1, 1923, and that the joint resolution of the Legislature extending the time for the payment of taxes did not restore the right to pay taxes under protest and bring suit for the recovery of the same. The joint resolution did not deal with the right to bring a suit for the recovery of taxes illegally collected at all, but simply provided a time for the payment of the tax. It is contended that if by reason of the enactment of the joint resolution the plaintiff can maintain that action, such resolution has the effect of restoring a right which had become barred by lapse of time and that such resolution would be in violation of section 52, art. 5, of the Constitution, which provides:

"The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by statute of this state."

The joint resolution did not grant a right to maintain an action for the recovery of taxes and did not restore any right or remedy which had been lost by lapse of time. It provided a time within which taxes might be paid, and nothing more. It did not revive any right or remedy, as no right or remedy existed until the taxes were paid by the plaintiff at the time and in the manner provided by law. Prior to the time the taxes were paid, no right to maintain this action existed in the plaintiff, and there was no remedy for a right which did not exist. After the passage of the joint resolution which prescribed a time within which the tax might be paid, and after the payment of the taxes, a right of action existed under section 9971, supra, and a remedy was afforded by said section of the statute.

It is contended that the plaintiff cannot avail himself of the special remedy provided by section 9971, because it did not specify the grounds of complaint in its notice of protest. The notice of protest was in the following form:

"Notice of Protest.
"To M. S. Ryan, Treasurer of Oklahoma County, Okla.

"Oklahoma News Company hereby notifies you that the payment of $200.86 of the first half of the regular ad valorem taxes for the fiscal year ending June 30, 1923, referred to as the taxes for 1922, is expressly protested, the same being one-half the products of the following rates of levies illegal for want of authority to make them, or by reason of being excessive:

3.90 Mills of Okla. City General Fund _____$126.75
.50 Mills of Okla. County General Fund _____ 16.25
.70 Mills of Okla. County Separate School Fund _____ 22.75
.15 Mills of Okla. General Fund 4.88
.34 Mills of Okla. Sinking Fund 11.05
.36 Mills of Okla. City School Dist. Gen. Fund _____ 11.70
.23 Mills of Okla. City School Dist. Sinking Fund _____ 7.48
6.18 Mills Total _____ 200.86

"Payment whereof is made under protest and solely for the purpose of avoiding the imposition of burdensome penalties and the issuance and levy of legal process for its collection and are notified not to disburse or part with such excessive and illegal tax and that suit will be brought for its recovery.

"Dated this 15th day of March, 1923.
"Oklahoma News Company."

The statute requires that the person paying the taxes shall give notice to the officer collecting the tax showing the grounds of complaint and that suit will be brought against the officer for recovery of the same. The purpose of this provision of the statute was to require the person complaining to point out the portion of the tax which the taxpayer claimed was illegal, together with a sufficient statement of the objections to notify the collector of the character of the objections. It then became necessary to bring suit for the recovery of the alleged illegal tax within 30 days, at which time the grounds of objection could be set out in more detail in the petition. It was not contemplated that the protest should be in any particular form or that it should meet the requirements of a petition filed in court for the recovery of the tax. The protest in the instant case pointed out the specific items complained of, together with the exact amount of each tax which it was asserted had been illegally levied, and alleged that such taxes were illegal because they had been levied without authority to make the levy or because the levy made was excessive. It is our opinion that this notice was sufficient.

We conclude, therefore, that the trial court did not err in overruling the general demurrer of the defendant.

The plaintiff complains of the action of the trial court in sustaining a demurrer to the 4th, 6th, and 7th causes of action. The ruling of the court in this regard is in accord with the law announced in Goings v. A., T. & S. F. Ry. Co., 88 Okla. 283, 213 Pac. 84, and Hines v. Dalton, 90 Okla. 239, 217 Pac. 168.

Plaintiff next complains of the ruling of the trial court in sustaining a demurrer to plaintiff's third cause of action, which involves .70 mill of a levy of 1.70 mills made for the benefit of the separate school fund of Oklahoma county. The plaintiff contends that the legal rate for this fund is one mill unless an election is held authorizing an additional levy. No election was held authorizing an increased levy. Section 9692, Comp. Stat. 1921, provides:

"In all counties, the total levy for current expenses of each county, city, town, township, or school district shall not exceed in any one year the following:

"County levy not more than four mills, provided that any county may levy not exceeding one mill additional in aid of the common schools of the county. * * *"

Section 9698, Comp. Stat. 1921, subdivision (a), provides:

"The appropriations for the county shall be itemized so as to show the amount of funds appropriated for the several offices, boards and commissions, and shall be detailed in separate items as to each thereof, as follows:

"* * * For the separate schools of the counties, if any, with amounts for the purchase of grounds in each district, the erection or purchase of buildings in each district, the salaries of teachers, and all other maintenance expenses in such districts, separately stated in such amounts as may be necessary to provide accommodation, facilities and school term in the separate schools, if any, in each district in the county, equal to the accommodations, facilities and school term provided for the other regular public schools in the same district even though such appropriation required a levy exceeding the limit otherwise provided by acts of the Legislature on the levy for all county purposes; * * * for aid to the common schools of the county to be apportioned to the various districts on warrants to the county clerk, at the same time and on the same basis as the state school fund is apportioned to the districts of the county; provided, however, that in the event the appropriation for the separate schools in the county together with appropriations for other county purposes, would require a levy on the assessed valuation of the county exceeding the constitutional limit of such levy, or such limit as may hereafter be provided by law, then the county excise board, may at the time of making the levy, provide that so much of the levy for aid to the common schools be set apart and used for the benefit of such separate schools in the county, as will be necessary to furnish the amount of the appropriation for such separate schools which is over and above the amount which can be levied for such schools under the law fixing the limit of the county levy for all purposes; provided, however, that the appropriation for aid to the common schools, including separate high schools, if any and for aid to the county high school, if any, shall not aggregate an amount greater than the equivalent of a levy of two mills on the assessed valuation of the county for the year."

The plaintiff contends that section 9698, supra, authorizes the excise board to make a sufficient appropriation for the maintenance of separate schools, even though such appropriation requires a levy in excess of one mill, but contends that this section of the statute does not grant to the excise board authority to make a levy to raise the amount required by the appropriation and the authority must be found in sections 9692 and 9707, Comp. Stat. 1921, which limit the amount of the levy to one mill unless a larger levy is authorized at an election held for that purpose. It is our opinion that chapter 48, Senate 323, Act of March 31, 1921, authorized a levy for the maintenance of separate schools and removed all statutory

limitations on such levy up to the constitutional limit of eight mills, and if the amount which could be raised within the eight mills was insufficient, the excise board was authorized to make an additional levy of two mills in accordance with section 9, art. 10, of the Constitution. The levy in the instant case, being within the eight mill limit, was not excessive or illegal.

Plaintiff next complains of a levy of .5 mill for a boys' school which was levied in addition to the 4 mills for current expenses provided by section 9692, Comp. Stat. 1921.. It is conceded by the defendant that this levy for a boys' school was in addition to the four mills authorized by section 9692, supra, but it is contended that this levy was made under authority of chapter 297, Sess. Laws 1919, and that this statute authorized the excise board to make a levy of not to exceed one-half mill on the dollar for the erection and maintenance of a county supervised school for neglected and dependent white boys, and that the tax for that purpose was in addition to the four mills for current expenses. It is further contended that the levy for a boys' school was not a levy for current expense purposes, and is therefore not within the limitation prescribed by section 9692. The language of section 1, ch. 297, Sess. Laws 1919, authorizing a levy for a boys' school, is as follows:

"The county commissioners of any county of this state having a population of 52,000 persons, according to the last preceding decennial federal census or any census hereafter taken, may, if they deem it necessary, levy a tax not to exceed one-half mill on the dollar upon all taxable property of such county for the purpose of buying a suitable farm and the erection of a building for, and the maintenance of, a county supervised school and home for neglected and dependent white boys of such county, under the age of 16 years, etc."

The defendant has cited cases holding that "current expenses" has been interpreted to mean continuing regular expenses of the municipality and funds appropriated for such purpose cannot be appropriated to the building of permanent improvements, and the defendant argues that the tax under consideration is not for current expenses within the meaning of that phrase as contained in section 9692 of the statute. While the cases cited are authority for the contention that funds raised by taxation for current expenses cannot be used for the purchase of a site and the construction of a building for a boys' school, in the absence of specific authority of the Legislature, this authority was granted by ch. 297, Sess. Laws 1919. This statute authorized the expenditure of funds raised during a current fiscal year for this purpose, whereas it was doubtful whether such expenditure could be made out of current funds in the absence of such legislative authority. It is our opinion, however, that the fund authorized to be levied for that purpose became a part of the fund for current expenses. Current expenses as used in the statute refer to the expenses which may be met out of any tax which is authorized by the Legislature to be levied for any one year within the constitutional limitation of section 9, art. 10, except section 9692 provides that annual installments on bond issues and judgments and interest thereon shall be considered a part of the current expenses. In addition to the taxes which may be authorized within the limitations contained in section 9, art. 10, the various municipalities are authorized to increase the rate of taxation for purposes other than current expenses under the provisions of section 10, art. 10, and section 27, art. 10. Any tax authorized to be levied by the Legislature for any current fiscal year other than the taxes authorized by sections 10 and 27 are for current expenses and limited by the provisions of section 9962, supra, unless the Legislature has authorized an additional levy.

The defendant contends that chapter 297, Session Laws 1919, should be construed as authorizing an additional levy above the amount of four mills specified in section 9692, supra, and in this connection relies on the case of Lusk v. Starky, 53 Okla. 794, 158 Pac. 918, which involved a levy of one-fourth mill for state highway construction purposes, which the court held was in addition to the current expense limitation of four mills fixed by section 9692, and the case of Lusk v. Eminheizer, 53 Okla. 785, 158 Pac. 915, which involved a levy for township road drag purposes, and which the court held was in addition to the limitation fixed by law for current expenses. The levy for township road drag purposes directed the expenditure of not to exceed two mills for this purpose, and the court held that it was the intention of the Legislature to authorize an additional tax for that purpose because the township was required to expend money for road drag purposes for the purpose of carrying out the policy of the state in the matter of establishing a uniform system of good roads and differed from the ordinary township purposes which the Legislature had in mind at the time the limitation of one and one-half mills for township purposes was enacted. The levy for state highway construction was made under a statute which provided that in order to carry into effect the provisions of the act the

county excise board might levy for current expenses of said county not to exceed eight mills. This language was clearly an expression of intention that an additional levy might be made for that purpose. Both of the above statutes differ from the statute which we now have under consideration, as the statute authorizing a levy for a boys' school does ont direct the expenditure of any sum by the county for that purpose. It is optional with the county whether it will undertake the burden of construction and maintaining a boys' school, and there is no language in the act which indicates an intention on the part of the Legislature to authorize an additional levy for that purpose. Had a levy for this purpose been required by the Legislature, then it might be said that the Legislature had imposed upon the county a burden which was not contemplated when section 9692 was enacted. No such requirement was made, and we conclude that it was the intention of the Legislature to authorize a county to levy taxes for this purpose, when, by reason of having reached a population of 52,000, and a proportionate increase in taxable values, such levy could be made without increasing the levy beyond the limitation provided by section 9692. In these circumstances we are of the opinion that the levy of .5 mill for the boys' school exceeded the statutory limitation.

The plaintiff next complains of the levy of 9.9 mills made for the general fund for current expenses of Oklahoma City for the fiscal year beginning July 1, 1922, and contends that 3.9 mills of this levy is excessive and illegal, because the maximum levy authorized by law without an election is six mills. Section 9692, Comp. Stat. 1921, provides that the total levy for current expenses for each city in this state shall not exceed in any one year six mills, and sections 9707 to 9712, Comp. Stat. 1921, inclusive, provide that the levy may be increased to ten mills at an election held for that purpose. It is the contention of the defendant that Oklahoma City is not bound by the limitations contained in the above sections of the statute because the Oklahoma City tax is levied under the provisions of the charter of Oklahoma City and not under the provisions of the statutes above referred to, and it is contended that the provisions of the charter of Oklahoma City supersedes the provisions of the statutes. Section 3 (a), article 18, of the Constitution provides:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution of this state. * * *"

And section 4508, Comp. Stat. 1921, provides:

"When a charter for any city of this state shall have been framed, adopted and approved according to the provisions of this article, and any provisions of such charter shall be in conflict with any law or laws relating to cities in force at the time of the adoption and approval of such charter, the provisions of such charter shall prevail and be in full force, notwithstanding such conflict, and shall operate as a repeal or suspension of such state law or laws to the extent of such conflict; and such state law or laws shall not thereafter be operative in so far as they are in conflict with such charter: Provided, that such charter shall be consistent with and subject to the provisions of the Constitution, and not in conflict with the provision of the Constitution, and laws relating to the exercise of the initiative and referendum, and other general laws of the state not relative to cities of the first class."

In Mitchell v. Carter, 31 Okla. 592, 122 Pac. 619, this court said:

"In other words, the effect of said statute was to declare the law as it already existed in the Constitution, merely setting out in greater detail than as contained in article 18. In Lackey v. State, supra, the rule was declared that whenever any matter fell 'within the domain of municipal government' or related solely to municipal affairs, such provision of a municipal charter, adopted pursuant to the provisions of article 18, supersede the general state laws."

To the same effect are the following cases: Lackey v. State, 29 Okla. 255, 116 Pac. 913; City of Columbus v. Ward, 64 Okla. 30, 165 Pac. 1145: In re Initiative Petition, 89 Okla. 124, 214 Pac. 186; State v. Callahan, 96 Okla. 276, 221 Pac. 718; Oklahoma City v. Bodine, 79 Okla. 106, 187 Pac. 209. Section 3, art. 7, of the charter of Oklahoma City provides:

"The board of commissioners shall by ordinance or resolution on or before the first Tuesday in August or at such other times as may by resolution or order be provided, of each year, levy an ad valorem tax for all purposes, except as herein otherwise provided, of not to exceed the limit provided by the Constitution and laws of the state, which said levy shall include the levy for park and library purposes. Said ordinance or resolution shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be diverted to any other purpose. The tax so levied when collected shall be kept in the fund created."

The defendant contends that this provision of the charter means that the city is authorized to make a levy for any amount within the limitations prescribed by sec-

tion 9, art. 10, of the Constitution. To support this contention the defendant cites the case of Oklahoma City v. Bodine, supra. But while that case supports the contention that the provisions of the municipal charter of Oklahoma City supersede the general state laws in connection with matters of purely municipal concern, it did not determine that the matter of levying taxes or the amount of taxes which a municipality is authorized to levy is a matter of purely municipal concern, and subject to control by charter provisions. An examination of the Constitution and statutes discloses that this matter is not one of purely municipal concern, but is a question which is controlled by general laws of the state. Section 14, article 10, of the Constitution provides:

"Taxes shall be levied and collected by general laws, and for public purposes only * * *"

Section 20, art. 10, provides:

"The Legislature shall not impose taxes for the purpose of any county, city or town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof respectively, the power to assess and collect such taxes."

The Constitution confers no authority on a city to levy a tax, but the Legislature is authorized to confer this power. Section 9, art. 10, limits the amount of tax which may be authorized to be levied by the Legislature and section 20, art. 10, prohibits the Legislature from imposing any tax for city purposes, but authorizes the Legislature by general laws to confer on the city the power to assess and collect such taxes. In the absence of legislative authority, the city has no power to assess and collect a tax at all. Metropolitan Theatre v. City of Chicago, 228 U. S. 61; Edgerton v. Coldsboro Water Co. (N. C.) 35 S. E. 243; City of N. Y. v. Metropolitan Ry. Co. (N. Y.) 67 N. E. 69. The authority of Oklahoma City to levy a tax must be found in the general laws enacted by the Legislature. Where, then, is the general law of this state granting to Oklahoma City the power to levy a tax? It is found in sections 9692, 9699, and 9797. Since the authority to make the levy for city purposes must be granted by general laws, and since no levy can be made unless made under authority of a legislative enactment, the statutes above referred to must be construed as general laws or no authority for the city levy exists. If these sections of the statute are construed as general laws, the charter of Oklahoma City does not supersede the same, as the charter in terms provides:

"That the levy shall not exceed the limitations provided by the Constitution and laws of the state."

The numerous authorities cited by the defendant are to the effect that the laws of the state, as used in section 4508 of the statutes, mean the general laws of the state. That the statutes of the state providing for the assessment and collection of taxes are general laws, and not laws of purely municipal concern, was determined in the case of City of Sapulpa v. Paul Land, 101 Okla. 22, 223 Pac. 640. We adhere to the views herein expressed and conclude that the amount of tax authorized to be levied by a municipality and the manner of levying the same is a matter of general public interest and can be accomplished only by general laws, and not by charter provisions.

The general laws of the state limit the levy for current expenses for cities to six mills, but with authority to make an additional levy, provided an election is held therefor. This general law can be superseded only by a general law enacted by the Legislature and cannot be superseded by the provisions of a city charter. Sections 9707 to 9712, inclusive, which authorize an additional levy where authorized by an election for that purpose, do not simply provide a procedure for making a levy, but confer authority upon the various municipalities to make the increased levies, and such additional levies can be made only by complying with these sections of the statute.

In the instant case the levy in excess of six mills was not authorized by an election held for that purpose and is invalid unless the contention made by the defendant that such portion of the tax levied was not for current expenses is well taken.

The defendant itemizes items of expenditure included in the expenditures of the city amounting to $103,355, which items were in the nature of permanent investments, and contends that such items are not to be considered a part of the current expenses of the city government. What we have heretofore said with regard to current expenses to counties applies with equal force to this contention, and it is our opinion that the limitation in section 9692 covers all items of expenditure during a current fiscal year, except such items as are excepted by express provisions of the statute. The defendant refers to the fact that Oklahoma City operates a waterworks system and that in doing so it is operating in an administrative and business capacity rather than exercising strictly governmental functions, and that it would be unfair for a city operating such enterprises to have to operate within the same limitations placed on other cities which do not operate a

waterworks system or similar system. This position is not well taken, because the revenues derived in the operation of the waterworks system would be deducted from the amount shown by the annual budget to be necessary for the operation of the city government for the ensuing year, and it is only necessary to levy an ad valorem tax for the amount of the budget less the revenues from other sources. If for any reason the receipts from these sources do not equal the expenditures, the deficiency must be raised by a levy for that purpose, and such levy is a portion of the levy for current expenses. It is our opinion that the levy of Oklahoma City was excessive in the amount of three and nine-tenths mills and that the plaintiff was entitled to recover the tax paid by reason of such illegal levy. The judgment of the trial court is reversed, and the cause remanded, with directions to render judgment in accordance with the views herein expressed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, and MASON, JJ., concur.