**ST. LOUIS-SAN FRANCISCO RY. CO. v. DICKEY, Co. Treas.**

No. 15562—Opinion Filed July 14, 1925.

(Syllabus.)

1. **Counties—Tax Levies—Free Fair as Current Expense.**

A levy for free fair is not an additional levy, but a levy for current expense, and if in excess of the amount allowed for current expense, is invalid.

2. **Same—Receipts from Gross Production Tax not Credited to Road and Bridge Fund.**

Receipts from gross production tax should be credited to the estimate made by the county excise board for construction of state highways, and not to the road and bridge fund, which is derived from a levy for current expense.

3. **Municipal Corporations — Excess Tax Levy for Current Expenses—Charter Cities Governed by General Law.**

Cities operating under a charter form of government are governed by the general laws of the state in relation to the amount limited for current expenses, and where it is shown that a levy was made of 7.66 mills for current expenses of the city, and no election was had authorizing the increase and said amount is not an additional levy, as required by law, the excess levy is invalid.

Error from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by the St. Louis-San Francisco Railway Company against Wayne L. Dickey, Treasurer of Tulsa County. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

W. F. Evans and Stuart, Sharp & Cruce, for plaintiff in error.

John M. Goldsberry, Co. Atty., and James Harrington, Asst. Co. Atty., for defendant in error.

LESTER, J. The parties will be referred to as they appeared in the court below.

This action originated in the district court of Tulsa county, Okla., in which the plaintiff brought suit to recover taxes which it alleged to be invalid, and paid under protest. After the first half of the tax for the year 1921 became payable and before they became delinquent, the plaintiff paid one-half of its tax and served notice of protest upon the county treasurer, designating that portion of the tax which it protested against paying, and thereafter, under section 9971, Comp. Stat. 1921, brought suit in the district court to recover the tax which it had paid under protest, but before the case was tried, the second half of the taxes for said year became due and payable, and were paid by plaintiff under protest, as was done with reference to the first half, and thereafter the plaintiff railway company filed a supplemental petition asking for judgment for the return of the first half paid under protest and also of the last half paid under protest, and the case was tried to the court on the issue of law as to whether the amounts of taxes it paid under protest were valid. The trial court held said taxes to be valid, and rendered judgment in favor of defendant, and the plaintiff prosecutes this appeal to reverse the action of the district court. The propositions presented will be discussed separately.

The first cause of action in plaintiff's petition embraces two items, which plaintiff contends are invalid; one item is that of .18 mills levy for free fair in excess of levy of 4 mills. Section 9692, Comp. Stat. 1921, is as follows:

"In all counties, the total levy for current expenses of each county, city, town, township or school district, shall not exceed in any one year the following:

"County levy not more than four mills, provided that any county may levy not exceeding one mill additional in aid of the common schools of the county; and provided, that where the assessed valuation of any county is less than $5,000,000, the county levy shall not exceed seven mills for current expenses, and one mill in aid of the common schools of the county; provided, further, that where the assessed valuation of any county is less than $13,500,000, and not less than $5,000,000, the county levy shall not exceed six mills for current expenses and one mill additional in aid of the common schools of the county; city levy not more than six mills; incorporated town levy not more than four mills; township levy not more than one and one-half mills; school district levy for the support of common schools, not more than five mills. Provided, that the words 'current expenses' as used in this section shall not include an annual sinking fund to pay the bonded indebtedness of such county, city, town, township or school district at its maturity, or the interest falling due on its outstanding bonded indebtedness, or any judgment against such county, city, town, township or school district. Provided, the county excise board in each county in this state is hereby authorized to levy in addition to the levies provided for herein, not to exceed one mill for tick eradication in such county. Provided, that this act shall be construed (not) to repeal or modify the provisions of section 5, chapter 30 of the Session Laws, 1916, authorizing additional levies of taxes for county road and bridge purposes."

The issue presented here is whether the levy for free fair is an additional levy other than that provided for current expense. The statute providing for free county and township fairs is found in chapter 179, Sess. Laws 1915, section 8 of said chapter being as follows:

"The county excise board may in their discretion levy not to exceed one-fourth of one mill upon the total valuation of the county in which the fair is held, for free fair purposes. on the estimate of the executive board of the county fair association."

This section was amended by chapter 89, Sess. Laws 1921, section 3 thereof being as follows:

"That section 8 of chapter 179 of the Session Laws of Oklahoma, 1915, be and the same is hereby amended to read as follows: 'Section 8. When the county commissioners shall have declared this act in full force and effect the county excise board shall levy not to exceed one-fourth of one mill upon the total valuation of the county for free fair purposes on the estimate of the executive board of the county fair association.'"

In the case of Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969, the court said:

"Plaintiff next complains of a levy of .5 mills for a boys' school which was levied in addition to the 4 mills for current expenses provided by section 9692, Comp. St. 1921. It is conceded by the defendant that this levy for a boys' school was in addition to the 4 mills authorized by section 9692, supra, but it is contended that this levy was made under authority of chapter 297, Sess. Laws 1919, and that this statute authorized the excise board to make a levy of not to exceed one-half mill on the dollar for the erection and maintenance of a county supervised school for neglected and dependent white boys,. and that the tax for that purpose was in addition to the 4 mills for current expenses. It is further contended that the levy for a boys' school was not a levy for current expense purposes, and is therefore not within the limitation prescribed by section 9692. The language of section 1, c. 297, Sess. Laws 1919, authorizing a levy for boys' school, is as follows:

" 'The county commissioners of any county of this state having a population of 52,000 persons, according to the last decennial federal census or any census hereafter taken, may, if they deem it necessary levy a tax not to exceed one-half mill on the dollar upon all taxable property of such county for the purpose of buying a suitable farm and the erection of a building for, and the maintenance of, a county supervised school and home for neglected and dependent white boys of such county, under the age of 16 years,' etc. * * *

" 'Current expenses' as used in the statute refers to the expenses which may be met out of any tax which is authorized by the Legislature to be levied for any one year within the constitutional limitation of section 9, art. 10, except section 9692 provides that annual installments on bond issues and judgments and interest thereon shall not be considered a part of the current expenses. In addition to the taxes which may be authorized within the limitations contained in section 9, art. 10, the various municipalities are authorized to increase the rate of taxation for purposes other than current expenses under the provisions of section 10, art. 10 and section 27. art. 10. Any tax authorized to be levied by the Legislature for any fiscal year other than the taxes authorized by sections 10 and 27 are for current expenses and limited by the provisions of section 9692, supra, unless the

Legislature has authorized an additional levy."

We hold that as the statute failed to make a levy for free fair an additional levy, it thereby becomes an item of current expense and should be included in the 4 mills, and that the same is an excess levy and invalid, unless the same was authorized by an election.

The next item challenged by plaintiff's petition in its first cause of action is .54 mills, which plaintiff claims is in excess, for the reason that a portion of the production tax was not deducted from the tax levied for the construction of a state highway, but instead was deducted from the estimate of the road and bridge levy, which must be included in the 4-mill levy for current expenses, and that by wrongfully deducting the gross production tax from an estimate that properly comes within the 4-mill levy for current expense, it thereby increased the levy for state highway construction .54 mills.

In the case of Payne v. Ross, 95 Okla. 273, 219 Pac. 144, it was held:

"A county levy for general road and bridge fund of the county is part of the current expenses of the county, and such levy, together with other levies for current expenses, cannot exceed the limit fixed by section 9692, Comp. St. 1921."

By this decision the court recognized the distinction between the roads under the supervision of the State Highway Commissioner, which are a part of the state roads, and the remaining county roads and bridges, which form no part thereof. A separate statute provides for an additional levy for the construction and maintenance of the state roads, but the Payne-Ross decision clearly held that the county roads and bridges, which are shown on the financial statement and estimate sheet in evidence as 9-V, are part of the current expenses of the county and subject to the 4-mill limitation hereinbefore quoted. Section 9699 is the authority under which ad valorem taxes are levied, and the part applicable to this case is as follows:

"When the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof, and shall have computed the total of the several items of appropriation for current expense and sinking fund purposes for the county and each municipal subdivision thereof with ten per cent. added thereto for delinquent tax, they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance

or revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation, provided that in no event shall the amount of such estimated income exceed the actual collections from such source for the previous fiscal year."

It was necessary, therefore, before an ad valorem tax could be levied for Tulsa county, that the total needs for the various departments be added, that the receipts from sources other than ad valorem taxes be deducted from the total needs, and that a rate be fixed only to meet the balance remaining after the deduction. One of these sources of revenue, other than ad valorem taxes, is the money received from the State Auditor, being proceeds from the gross production tax. The money so received must first be deducted from the estimated needs prior to the making of a levy. No question is presented in this case but that a deduction of the gross production tax was actually made. The question arises as to whether the deduction was made in the proper place. The following statutes clearly show to what funds the proceeds from the gross production tax are properly to be credited:

"Section 9822. The gross production tax provided for in this act is hereby levied and collected for the following specific purposes, to wit:

"(1) For current expenses of state government, two-thirds.

"(2) For and in aid of the common schools of the county from whence the oil or gas and other mineral is produced, one-sixth (five mills).

"(3) For and in aid of the construction of permanent roads and bridges of the county from whence the oil or gas or other mineral is produced, one-sixth (five mills)."

The next question that arises is, What are the permanent roads and bridges? Our Legislature has seen fit to determine this question in section 10199, Comp. St. 1921, and we quote the two paragraphs thereof which are applicable to the question at issue:

"All gross production tax levied and collected for permanent roads shall be used to build and construct roads, culverts and bridges to be hereinafter designated by the proper authorities, and plans and specifications shall be subject to the approval of the State Highway Department.

"Permanent roads are defined to mean roads surfaced with crushed rock, gravel, macadam, brick, concrete, asphalt-macadam, or any other hard surfacing material."

It will be seen from this statute that that portion of the gross production tax must

be credited to such permanent roads and highways as are under the supervision of the State Highway Commission.

The following quotation is from the 1916 Statutes, amending the 1915 Good Roads Law, section 5, chapter 30:

"In addition to the one-mill levy authorized for common school purposes and in addition to the levies authorized for current county expenses by chapter 195, Session Laws 1913, the county excise board in each county in this state is hereby authorized, at the option of said board, to make an additional levy for road purposes upon all property in said county subject to taxation upon an ad valorem basis in an amount which, together with the aforesaid levies authorized to be made in said chapter 195, Session Laws 1913, shall not exceed a total of eight mills; said additional levy when made and collected shall be credited to the county road construction fund, and shall be used for the construction and maintenance of state highways under the supervision of the board of county commissioners as provided in this act."

The State Legislature by the Good Roads Law of 1915, chapter 173, created the Department of Highways for the state of Oklahoma, provided for the administration of such a department and undertook the construction of state roads, all under the supervision of the State Highway Commissioner. It will be seen from the following excerpts from the act, section 1, of article 1 provides:

"The Department of Highways is hereby created and shall be located at the State Capitol, and properly furnished and provided for by the State Board of Public Affairs."

Section 3 of article 1 provides:

"The duties of the Commissioner of Highways shall be: First, to have the supervision of all matters relating to said roads and highways. * * *"

Section 2 of article 2 provides:

"As soon as said state roads are so designated, the board of county commissioners shall cause said state roads to be plainly marked on a map. Said map, after being so marked, shall be deposited with the county clerk, and shall be open to public inspection, and a copy thereof shall be furnished the Department of Highways."

The amendment appearing in chapter 30, Session Laws 1916, is as follows:

"At the time of employing such engineer, or as soon thereafter as practicable, the board of county commissioners shall designate and select for improvement, as provided herein, from the highways of the county not less than ten per cent. nor more than 15 per cent. of the total mileage, same to be the main traveled roads of the county,

and which must connect with the state roads in adjoining counties, such roads to be designated as state roads. The system of road construction herein provided for shall apply only to highways outside the limits of cities and towns, while the system of bridge and culvert work herein provided for shall apply to all highways throughout the county outside the limits of cities of the first class. Provided, that where the board of county commissioners have heretofore designated and selected for improvement less than ten per cent. of the total road and mileage of such county, said board may at any time designate and select for improvement in the manner provided by law additional mileage not to exceed in all 15 per cent. of the total mileage of such roads of the county.

"Such highways so designated for improvement under the supervision of the board of county commissioners shall hereinafter be known as the state road system."

Section 2 of chapter 30, Session Laws 1916 is in part as follows:

"All monies received by the board of county commissioners for the road and bridge fund, or for the state highway construction fund, shall be paid out only on order of said board for the purchase of tools, machinery, equipment, engineering services, construction and work done on the state road system, for dragging, draining and tiling; or for bridges, culverts, as provided by law, provided that the expenditures of the state highway construction fund shall be limited to the improvement of state roads."

We are of the opinion that when the excise board deducted the money received from the gross production tax from the county road and bridge fund and not from the construction of the state highway fund, the same was erroneous, and therefore the plaintiff is entitled to recover .54 mills on account of such error on the part of the excise board.

Plaintiff in its second cause of action complains that the levy for current expense for the city of Tulsa was in excess of the legal limit to the extent of 1.66 mills. The levy so made was as follows:

| Fund. | Rate Levied. | |
|---|---|---|
| Current | 7.66 | mills |
| Library | .27 | " |
| Cemetery | .05 | " |
| Repairing streets | .03 | " |
| Sinking fund | 3.79 | " |
| Total | 11.80 | " |

Defendant in its brief confesses error upon the part of the excise board in levying 1.66 mills as being in excess of the rate allowed for current expenses, to wit, 6 mills. At the time the excise board fixed the rate of levy for current expense of the city of Tulsa, it evidently proceeded upon the hy-

pothesis that the city; operating under a charter form of government, was permitted to exceed six mills for current expenses. However, the case of Oklahoma News Co. v. Ryan, supra, definitely settled this question in favor of plaintiff's contention, and we hold that the plaintiff is entitled to recover 1.66 mills, as being in excess of the rate allowed for current expenses.

The contention is made by the defendant in its brief that the trial court erred in permitting the railway company to file what it termed a supplemental petition herein, under which the action for recovery of the second half of taxes was joined with the action for recovery of the first half, but we can see no substantial merit in this contention. Had there been two separate actions brought, one for the recovery of the amount of the first half paid under protest, and the two actions had been separately tried, they would have both involved the same question of law, both assail the same tax levy and both depend upon the same evidence. Hence we are unable to see where any injustice was done to the county by permitting the right of recovery of the entire amount paid under protest to be determined in one trial.

. The cause is reversed and remanded, with direction to enter judgment for plaintiff in the sum of .72 mills on its first cause of action and the sum of 1.66 mills on its second cause of action.

NICHOLSON, C. J., and HARRISON, MASON, PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 15 C. J. p. 637, § 349. (2) 15 C. J. p. 641, § 352 (1916 Anno.). (3) 28 Cyc. p. 1668.