GAME AND FISH
The Wildlife Code governs trapping of all wildlife and not just furbearing wildlife. House Concurrent Resolution No. 1127 does not limit the scope of 29 O.S. 5-502 [29-5-502] (1976), to only furbearing forms of wildlife. The Attorney General is in receipt of your letter in which you request an opinion on the following question: "Does House Concurrent Resolution No. 1127 limit the scope of 29 O.S. 5-502 [29-5-502] (1976) to only furbearing forms of wildlife ?" Title 29 O.S. 5-502 [29-5-502] (1976) of the Oklahoma Wildlife Conservation Code, which became effective April 8, 1974, provides, in part, as follows: "Trapping devices "A. No person may use, set, construct, possess or tend any trap, snare, deadfall or other device for the purpose of catching any wildlife, except fish and frogs, in this State, except that he may use: . . ." (Emphasis added) Title 29 O.S. 2-149 [29-2-149] (1976) defines "wildlife", as follows: " 'Wildlife' is all wild birds, mammals, fish, reptiles, amphibians, and other wild aquatic forms, and all other wild animals, regardless of classification, whether resident, migratory, or imported, protected or unprotected, dead or alive, and shall extend to and include any and every part of any individual species of wildlife." The Thirty-fourth Legislature (the same session that enacted the Oklahoma Wildlife Conservation Code of 1974), passed House Concurrent Resolution No. 1127, which states as follows: "Whereas, the intent of the Legislature concerning 29 O.S. 5-502 [29-5-502] of the Oklahoma Wildlife Code was not properly expressed in the substantive provisions of such section; and "Whereas, it is the intent of the Legislature that 29 O.S. 5-502 [29-5-502] of the Oklahoma Wildlife Code, relating to trapping devices, be applicable only to furbearers, as defined in the Code, and not to all wildlife. Now, therefore, be it resolved by the House of Representatives of the 2nd Session of the 34th Oklahoma Legislature, the Senate concurring therein: "SECTION 1. Furbearers "That it is the intent of the Legislature that Section 5-502 of the Oklahoma Wildlife Code, relating to trapping devices, be construed to apply only to furbearers, as defined in the Code, and not to all wildlife. "SECTION 2. Emergency "Adopted by the House of Representatives the 16th day of May, 1974. "Adopted by the Senate the 17th day of May, 1974." 29 O.S. 2-111 [29-2-111] defines "furbearer" as follows: "Furbearer. — 'Furbearer' is any animal whose fur or pelt has commercial value and includes specifically: beaver, badger, fox, mink, muskrat, possum, otter, raccoon, skunk and weasel." The purported effect of House Concurrent Resolution No. 1127 is to limit the species of wildlife to which the trapping provisions of 29 O.S. 5-502 [29-5-502] apply. As passed, 29 O.S. 5-502 [29-5-502] applies to all species of wildlife. The said House Concurrent Resolution No. 1127 states that it was the intent of the Legislature that 29 O.S. 5-502 [29-5-502] apply only to those animals whose fur or pelt has commercial value. The adoption of said resolution gives rise to the question of whether it does in fact legally modify the scope of 29 O.S. 5-502 [29-5-502]. House Concurrent Resolution No. 1127 was introduced in both the House of Representatives and Senate on May 16, 1974, and adopted by the House of Representatives on May 16, 1974, and by the Senate on May 17, 1974. It was not presented to the Governor for his signature, and therefore was not signed by him. Sutherland Statutory Construction, 4th ed. (1972) states at page 335 that: "Resolutions are less formal than bills and therefore are a less authorative expression of legislative action. Generally, resolutions are employed for the following purposes: (1) to express sentiments or opinions (2) to carry out the interadministration of the legislative body (3) to make temporary laws (4) to establish procedures for constitutional amendments." And, at page 337, that: "A concurrent resolution is merely a simple resolution which is passed by both houses of the Legislature. It may be voted upon independently in both houses at once or passed in sequence in the same manner as a bill . . . "Although a concurrent resolution speaks for the entire Legislature, it has only limited legal effect and for most purposes is not law." Oklahoma News Co. v. Ryan,101 Okl. 151, 224 P. 969 (1924) states as follows: ". . . As a general rule a joint or concurrent resolution adopted by the Legislature will not have the force or effect of a law, where the Constitution under which the legislative body operates requires the enacting of all laws to be in some prescribed form other than by resolution; . . . ". . . "The joint rules of the Oklahoma Legislature refer to bills and resolutions in the same terms . . . The framers of the Constitution contemplate the passage of laws by bills and by joint resolutions, and the practice existing in the Legislature of passing laws of a temporary character by joint resolution should be upheld in the absence of a constitutional requirement that all laws should be enacted by a bill. The Oklahoma Constitution contains no such requirement. Article V, Section 34 of the Constitution provides: "'Every bill shall be read on three different dates in each house, and no bill shall become a law unless, on the final passage, it be read at length, and no law shall be passed unless upon a vote of the majority of all the members elected to each house in favor of such law; . . .' ". . . Article VI, Section 11, reads in part as follows: " 'Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it comes a law, be presented to the Governor; . . .' "This provision of the Constitution shows clearly it was intended that laws might be enacted by bill or by resolution, but that neither bill nor joint resolution shall become a law unless presented to the Governor for approval or rejection . . ." (Emphasis added) (Pages 971 and 972) House Concurrent Resolution No. 1127 was adopted by the House of Representatives on the same date that it was introduced therein and was adopted by the Senate the next succeeding day after its introduction therein. Therefore, its passage clearly did not comply with the provisions of Article V, Section 34 of the Oklahoma Constitution. Also, said resolution was not presented to the Governor for approval or rejection, therefore, did not become law because its passage did not comply with the provisions of Article VI, Section 11, of the Oklahoma Constitution. Therefore, said resolution does not have the effect of law, but is merely an expression of the sentiment of the Thirty-fourth Legislature, which passed the resolution. See Oklahoma News Co. v. Ryan, supra; Board of Commissioners of Creek County v. Alexander, 58 Okl. 128, 159 P. 311 (1916); and 2 Okl.Op.A.G. 147-148 (Opinion No. 69-200). House Concurrent Resolution No. 1127, not having the force of a law, can only be used to determine the intent of the Legislature. However, a plain reading of 29 O.S. 5-502 [29-5-502] raises no doubt that it was intended to apply to any wildlife. The definition of "any wildlife", as set out in 29 O.S. 2-149 [29-2-149], is equally clear and certain. No ambiguities can be said to arise from said 29 O.S. 5-502 [29-5-502]. The cardinal rule in statutory construction is to ascertain and give effect to the legislative intention. However, that intention is to be first sought in the language of the statute itself, and if it is therein plainly expressed it must be followed without further inquiry. Mid-Continent Pipe Line Co. v. Stephens County,312 P.2d 883, 885 (Okl. 1957); Russell School District No. C-8 of Johnston County v. Askew 193 Okl. 102, 141 P.2d 575,577 (1943). Because 29 O.S. 5-502 [29-5-502] is plain, clear and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a clear reading suffices, and no interpretation is needed, and reference to House Concurrent Resolution No. 1127 is therefore precluded. Accordingly, House Concurrent Resolution No. 1127 has no legal effect upon 29 O.S. 5-502 [29-5-502] of the Oklahoma Statutes. It is not necessary to construe said Section, and has no binding effect upon the courts or subsequent sessions of the Legislature. See 2 Okl.Op.A.G. 147 (Opinion No. 69-200). It is, therefore, the opinion of the Attorney General that your question be answered as follows: The Wildlife Code governs trapping of all wildlife and not just furbearing wildlife. House Concurrent Resolution No. 1127 does not limit the scope of 29 O.S. 5-502 [29-5-502] (1976), to only furbearing forms of wildlife. (AMALIJA J. HODGINS)