Dear Director Warren,
¶ 0 This office has received your request for an Attorney General Opinion in which you ask, in effect, the following question:
Does House Concurrent Resolution No. 1107, Forty-SixthOklahoma Legislature, Second Session, which authorizes theDepartment of Central Services to acquire the Lincoln PlazaOffice Park pursuant to a lease-purchase agreement, meet therequirements of 74 O.S. Supp. 1998, §§ 85.4(G)(1) and85.4(I)(5)?
¶ 1 House Concurrent Resolution No. 1107 states that it is resolved by the House of Representatives, the Senate concurring therein, in pertinent part as follows:
 THAT pursuant to paragraph 5 of subsection I of Section 85.4 of Title 74 of the Oklahoma Statutes, the Oklahoma Legislature authorizes the Department of Central Services to acquire the Lincoln Plaza Office Park pursuant to a lease-purchase agreement, if such acquisition is in the best interest of the state as determined by the Department of Central Services.
¶ 2 Paragraph 1 of subsection G of Section 85.4 of Title 74, referenced in the resolution, requires in relevant part:
 No state agency shall enter into a lease-purchase agreement if title is acquired to tangible property of any class or nature by making lease, rental, or any other type payments, except as specifically authorized by law. . . .
74 O.S.Supp. 1998, § 85.4[74-85.4](G)(1) (emphasis added).
¶ 3 The other statutory provision about which you ask contains the following relevant language:
 Unless otherwise provided by law, state agency real property acquisitions subject to lease-purchase agreements shall be explicitly authorized by the Legislature. . . . Legislative authorization shall constitute legal authorization for this state or state agencies to enter into such lease-purchase agreements.
74 O.S.Supp. 1998, § 85.4[74-85.4](I)(5) (emphasis added).
¶ 4 Your question is whether House Concurrent Resolution No. 1107 meets these statutory requirements. To answer that question, we must examine the nature of legislative resolutions.
¶ 5 "In Oklahoma, laws may be enacted by resolution, rather than by introduction of a bill, provided that all constitutional requisites for the enactment of a law have been satisfied." A.G. Opin. 83-101, citing Ward v. State, 56 P.2d 136 (Okla. 1936);Oklahoma News Co. v. Ryan, 224 P. 969 (Okla. 1924). "If the resolution is passed by one house and is then sent to the other house for its concurrence and is passed by it and signed by the presiding officer of each house, and approved by the Governor, it becomes a law regardless of its designation." Ward v. State,56 P.2d at 137 (quoting Oklahoma News Co. v. Ryan).
¶ 6 House Concurrent Resolution No. 1107 was introduced May 26, 1998, and enrolled, signed, and filed with the Secretary of State on May 29, 1998. According to the history of the Resolution, it was not presented to the Governor for approval, nor would the time frame have allowed for the five days granted by the Constitution to the Governor in which to disapprove a bill. Okla. Const. art. VI, § 11. The Resolution was not signed by the Governor. Therefore, it does not follow the constitutional requisites necessary to become a law. The question then is whether it nevertheless constitutes sufficient legal authorization under Sections 85.4(G)(1) and 85.4(I)(5) of Title 74 for the Department of Central Services to purchase the Lincoln Plaza Office Park.
¶ 7 Section 85.4(G)(1) prohibits a lease-purchase agreement acquiring title to any class or nature of tangible property
unless specifically authorized by law. (Emphasis added.) The Department of Central Services has no statutory authorization to acquire real property. The Department of Central Services is given charge of the "construction, repair, maintenance, insurance, and operation of all buildings owned, used, or occupied by or on behalf of the state." 74 O.S. Supp. 1998, §63[74-63](B). The Director of the Department of Central Services is authorized to "purchase all material and perform all other duties necessary in the construction, repair, and maintenance of all buildings under its management or control." 74 O.S. Supp. 1998,§ 63[74-63](C). The Department of Central Services is further charged with keeping "an accurate account of all property purchased for the state or any of the departments or officers thereof, except that purchased for and by the two houses of the State Legislature." 74 O.S. Supp. 1998, § 63[74-63](F). Therefore, the duties of the Department of Central Services are more in the nature of acting as the State's property manager.
¶ 8 When the Legislature has given authority to a State agency to acquire property, it has done so specifically. The Aeronautics Commission, in conjunction with its purposes, "may, by purchase, gift, devise, or lease, acquire property, real or personal, or any interest therein." 3 O.S. Supp. 1998, § 85[3-85](h)(1). The Department of Transportation is authorized to "acquire and hold real or personal property in the exercise of its powers for the performance of its duties." 66 O.S. Supp. 1998, § 304[66-304](A)(4). The Oklahoma Tourism and Recreation Commission has the right and privilege to "acquire by purchase, lease, gift, or in any other manner and to maintain, use and operate any and all property, real, personal or mixed, necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it." 74 O.S. Supp. 1998, § 1847.1[74-1847.1](A)(2). These are a few examples of the Legislature granting authority for the acquisition of property by a State agency, demonstrating the Legislature's method for doing so. No such right has been granted to the Department of Central Services. The silence of the Legislature in that regard gives rise to an implication of its intent, City of Duncan v. Bingham, 394 P.2d 456, 460 (Okla. 1964), and there is no intent, either specific or implied, for the Department of Central Services to acquire property.
¶ 9 Attorney General Opinion 89-36, based on Section 85.4(G), clearly states that no agency may enter into the lease-purchase of real property in the absence of specific statutory authority to acquire such real property. The Opinion also recognizes that the Office of Public Affairs, now the Department of Central Services, acts only as an agent in such acquisitions, and can enter into contracts for property only if acting on behalf of an agency which has such authority. The concurrent resolution about which you ask is not a law, and therefore does not constitute statutory authority which would satisfy the requirement of Section 85.4(G)(1). Therefore, the Department of Central Services lacks sufficient authority under Section 85.4(G)(1) to acquire the Lincoln Plaza Office Park by lease-purchase agreement.
¶ 10 Section 85.4(I)(5) deals with lease-purchase agreements ofreal property and says they "shall be explicitly authorized bythe Legislature." (Emphasis added.) Thus, in addition to the general requirements for lease-purchase agreements in Section 85.4(G)(1), this is a specific requirement for lease-purchase agreements involving real property. "[A]uthorized by the Legislature" is not the same as "authorized by law." Nevertheless, Section 85.4(I)(5) goes on to say that Legislative authorization shall constitute legal authorization for this State or its agencies to enter into such lease-purchase agreements. We must then ask whether this "legal authorization" satisfies the requirement of Section 85.4(G)(1) that the agreement be "authorized by law."
¶ 11 The word "legal" is the adjective to denote something deriving authority from law, founded upon law. Webster's Third New International Dictionary 1290 (1993). While an act done with "legal authorization" is akin grammatically to an act "authorized by law," we must nevertheless look to what is constitutionally required in order for any act of the Legislature to have the force and effect of law. Article VI, § 11 of the Oklahoma Constitution, provides in pertinent part as follows:
 Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor[.]
Okla. Const. art. VI, § 11.
¶ 12 House Concurrent Resolution No. 1107 does express the intent of the Legislature, see A.G. Opin. 77-152, regarding the purchase of Lincoln Plaza Office Park.
¶ 13 As discussed above, however, House Concurrent Resolution No. 1107 fails to satisfy the constitutional requisites for the enactment of a law. Not being a law, the Resolution, despite the statutory language of Section 85.4(I)(5), cannot constitute "legal authorization" which would satisfy the requirements of 74O.S. Supp. 1998, § 85.4[74-85.4](G)(1). In other words, explicit authorization by the Legislature under Section 85.4(I)(5) is not sufficient to imbue the Department of Central Services with authority it does not possess. The Resolution cannot provide legal authorization for something that is not elsewhere authorized by law.
¶ 14 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Title 74 of the Oklahoma Statutes, Sections 85.4(G)(1) and85.4(I)(5) contain requirements relating to property acquiredunder lease-purchase agreements. Under Section 85.4(G)(1), aState agency is prohibited from entering into a lease-purchaseagreement if title is acquired to tangible property of any classor nature, except as specifically authorized by law. UnderSection 85.4(I)(5), if the lease-purchase agreement involves realproperty, it must be explicitly authorized by the Legislature.
 While House Concurrent Resolution No. 1107, Forty-SixthOklahoma Legislature, Second Session, which authorizes theDepartment of Central Services to acquire the Lincoln PlazaOffice Park pursuant to a lease-purchase agreement, expresses theintent of the Legislature, it does not satisfy the requirementof 74 O.S. Supp. 1998, § 85.4(G)(1) that the transaction beauthorized by law or constitute legal authorization under 74O.S. Supp. 1998, § 85.4(I)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GAY ABSTON TUDOR ASSISTANT ATTORNEY GENERAL